UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TRACY A. GORMLEY,

            Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

           Defendant.

CASE NO. 3:15-cv-05257 JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 13, 19, 20).

After considering and reviewing the record, the Court concludes the ALJ erroneously discounted plaintiff's testimony. Her activities of daily living, conservative medical treatment, work history, past drug use, and attempts to have a child were not

ORDER ON PLAINTIFF'S COMPLAINT - 1

clear and convincing reasons supported by substantial evidence in the record to reject her testimony. Reversal is required to reconsider plaintiff's statements.

## BACKGROUND

Plaintiff, TRACY A. GORMLEY, was born in 1970 and was 25 years old on the alleged date of disability onset of August 1, 1996 (*see* AR. 123-28). Plaintiff attended special education classes and completed the 12th grade (AR. 141). Plaintiff does not have past relevant work (AR. 21, 32).

According to the ALJ, plaintiff has at least the severe impairments of "mild disc space narrowing in the lumbar spine, dysthymic disorder, and anxiety disorder not otherwise specified (20 CFR 416.920(c))" (AR. 13).

At the time of the hearing, plaintiff was living with her mother, brother and boyfriend (AR. 31).

## PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration (*see* AR. 48-59, 51-72). Plaintiff's requested hearing was held before Administrative Law Judge Paul G. Robeck ("the ALJ") on September 12, 2013 (*see* AR. 27-46). On October 10, 2013, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 8-26).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ properly evaluated the medical evidence; (2) Whether or not the ALJ

properly evaluated plaintiff's testimony; (3) Whether or not the ALJ properly evaluated the lay evidence; (4) Whether or not the ALJ properly assessed plaintiff's residual functional capacity; and (5) Whether or not the ALJ erred by basing his step five finding on a residual functional capacity assessment that did not include all of plaintiff's limitations, and that was inconsistent with the DOT (*see* Dkt. 13, p. 2). Due to the ALJ's error in evaluating plaintiff's credibility, the Court will not address all issues below as the matter will need to be re-evaluated in total upon remand.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1)     Whether or not the ALJ properly evaluated plaintiff's testimony.

If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("There is no conflict in the caselaw, and we reject the government's argument that *Bunnell* excised the 'clear and convincing' requirement"); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Bunnell v.*

*Sullivan*, *supra*, 947 F.2d at 343, 346-47); *Brown-Hunter v. Colvin,* No. 13-15213, 2015 U.S. App. LEXIS 13560 at *14 (9th Cir. August 4, 2015). As with all of the findings by the ALJ, the specific, clear and convincing reasons also must be supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

    Here, plaintiff testified about her fatigue, tremors, leg pain and numbness (AR. 34, 40, 41-43). She testified that she leans on a cart when shopping because her legs have given out on her resulting in several falls (AR. 35-36). She testified that she has difficulty holding things in her hands due to tremors (AR. 43).  She stated in her function report that she experiences fear, anxiety, forgetfulness and confusion (AR. 154-57). The ALJ found that plaintiff's "functional limitations are not as significant and limiting as alleged" (AR. 19). The ALJ arrived at this conclusion based on: (1) activities of daily living inconsistent with allegations; (2) conservative medical treatment, (3) poor work history; (4) drug history; and (5) attempts to have a child (AR. 19, 21). Plaintiff contends these are not clear and convincing reasons supported by substantial evidence (Dkt. 13, 9). The Court agrees.

    A.    Activities of Daily Living

    Regarding activities of daily living, the Ninth Circuit repeatedly has "asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).

The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn, supra*, 495 F.3d at 639 (*quoting Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

The ALJ found plaintiff's activities inconsistent with her allegations because she cares for her pet cat, prepares food, performs household chores, shops for food at large stores, and socializes daily (AR. 19). The ALJ also noted that plaintiff can manage finances, although she lacks the income to pay bills (AR. 19). The ALJ summarized, "[t]hese activities are consistent with the above residual functional capacity assessment and are inconsistent with the claimant's allegations. They suggest greater functioning than alleged in her application and testimony" (AR. 19).

The ALJ did not specify which of plaintiff's allegations were contradicted by the cited activities. Nor does the ALJ explain how these daily activities meet the threshold of transferable work skills. The ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*)). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's

complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick, supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted). According to the Ninth Circuit, "we may not take a general finding--an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors--and comb the administrative record to find specific conflicts." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014); *see also Brown-Hunter v. Colvin,* 806 F.3d 487, 494 (9th Cir. 2015)

The ALJ's failure to identify and link the inconsistent testimony to the record is legal error. *Brown-Hunter*, 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination, [which] was legal error"). The ALJ's general statement of conflict with the evidence does not establish a clear and convincing reason to reject plaintiff's testimony.

Additionally, the ALJ failed to explain how these assorted activities of daily living meet the threshold of transferable work skills. The Ninth Circuit recently revisited this issue in *Garrison v. Colvin*, 759 F.3d 955 (9th Cir. 2014):

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day. *See, e.g., Smolen v. Chater*, 80 F.3d , 1273, 1287 n.7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted in original)); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily

transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.")

*Garrison v. Colvin*, 759 F.3d 955, 1016 (9th Cir. 2014).

Noting that plaintiff was able to care for her pets and perform certain household chores does not necessarily mean that plaintiff can hold down a steady job, and the ALJ made no attempt to analyze how these activities of daily living translate into transferable work skills. This is insufficient to support the ALJ's adverse credibility finding.

B.      Conservative Medical Treatment

The ALJ found that plaintiff's "mental health treatment has been conservative," and "[m]edication proved helpful" (AR. 18). The ALJ noted that plaintiff had little history of psychiatric care and was prescribed no medications (AR. 17). Such "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). While conservative treatment often conflicts with allegations of disabling impairment, plaintiff's record does not support this conclusion.

The record shows plaintiff was unable to afford medical treatment. In September 2012 plaintiff consulted rheumatologist Kye Park, M.D. (AR. 278). He noted "[s]he is uninsured and has limited resources and does not want to pursue physical therapy at this time" (AR. 278). Other medical notes discuss the cost of medication, and whether plaintiff can obtain generic medications or prescriptions on Wal-Mart's four dollar list (AR. 320). She was unable to afford a particular prescription for her acne rosacea, relying on samples and an alternative medication (AR. 294, 320). In August 2013, plaintiff was referred to rheumatology, but was unable to schedule an appointment

because she could not pay the required $200 deposit for self-pay patients (AR. 415). She has not been able to afford an MRI (AR. 158).

Additionally, plaintiff has tried multiple medications with little impact or unpleasant side effects. In October 2012, she reported some benefit from Celexa, but experienced side effects with an increase in dosage (AR. 294). Her doctor noted prior poor results from amitriptyline for her fibromyalgia and negative side effects from Prozac (AR. 294). Gabapentin and Flexeril helped with some of her pain, but also allowed her to identify separate and existing pain in her joints (AR. 307). She continues to experience pain, even with these medications (AR. 307).

The record shows plaintiff and her physicians had to balance side effects, health benefit, and cost during her treatment. Based on the evidence, plaintiff's conservative medical care seems to be rooted in difficulties finding a successful medication regime coupled with the cost of health care, rather than a lack of impairment. Thus, the ALJ's conclusions that plaintiff's conservative treatment conflicts with her allegations of disability and undermines her credibility are not supported by substantial evidence in the record.

C.   Poor Work History

The ALJ concluded "[t]he evidence does not suggest the claimant is motivated to work consistently" (AR. 19). The ALJ noted her "sporadic work history, with limited earning even before the alleged onset of disability" (AR. 19). Finally, the ALJ concluded the evidence "suggests factors other than her alleged impairments affected her ability to maintain fulltime employment" (AR. 19). A poor work history and little propensity to

work can negatively affect credibility about ability to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

At the hearing, the ALJ questioned plaintiff about her marginal work history (AR 38-39). Plaintiff testified, "I applied for disability when I was 24. They turned me down. I didn't know I could appeal" (AR. 39). She also stated she had not worked because she could not get medical care (AR. 39). The medical record suggests plaintiff was diagnosed with fibromyalgia when she was twenty years old (AR. 276). Based on this information, plaintiff may well have been unable to work precisely because of her impairments. The ALJ failed to indicate what evidence he was relying upon in concluding that she was not motivated to work. In the absence of such an explanation or supporting evidence, the ALJ's conclusion that plaintiff had little motivation to work is not supported by substantial evidence in the record as a whole.

D.   Drug History

The ALJ found plaintiff's drug history weakened her credibility "because it shows a pattern of voluntary injurious behavior. Her admittedly heavy and voluntary use of mind-altering illegal drugs shows willful neglect of her physical and mental condition" (AR. 19). According to the Commissioner, *Ludwig v. Astrue*, 681 F.3d 1047 (9th Cir. 2012), establishes that a history of substance abuse reflects negatively on credibility (Dkt. 19, 10). But, *Ludwig* does not permit reliance on a history of substance abuse to discredit a claimant's testimony. *Id*. at 1052. Instead, the case compares the relative credibility of an FBI agent and a claimant with a checkered past. "An FBI agent, by virtue of his employment, is likely to have more credibility with a trier of fact than a felon like

Ludwig, with conflicting medical records and a history of substance abuse." *Id*. at 1052. Rather than establishing that past substance abuse is a reason a grounds for discrediting subjective testimony, *Ludwig* merely remarks on bias inherent in weighing evidence. Defendant has cited no authority for the proposition that former substance abuse, alone, is a clear and convincing reason to conclude that plaintiff's testimony is not credible.

Plaintiff has an admitted history of amphetamine dependence (AR. 219). Her last drug use was in 2009 (AR. 19, 219). She is considered in full, sustained remission (AR. 22). There is no evidence of relapse. Nor is there evidence that she provided inconsistent information about her substance abuse, which would be grounds to discredit plaintiff's testimony. *See Verduzco v. Apfel,* 188 F.3d, 1087, 1090 (9th Cir.1999); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Nor is there any evidence that her past substance abuse has affected her ability to testify truthfully. The mere existence of prior substance abuse, without more, is not a clear and convincing reason to reject plaintiff's testimony.

E.     Attempts to Have a Child

The ALJ found plaintiff's attempts to conceive "suggest she believes she is capable and willing to care for a child. This evidence suggests her conditions do not prevent her from doing anything" (AR. 20). Plaintiff and her boyfriend wanted to have a child (AR. 40, 266, 311). However, she testified that they stopped trying to get pregnant because of her worsening health issues (AR. 40). "[I]t's most important that I get my health under control" (AR. 40). In light of this realization, the ALJ's conclusion that

plaintiff's testimony is not credible because of her desire to care for a child, if possible, is not a clear and convincing reason to reject her testimony.

None of the reasons cited by the ALJ to discredit plaintiff's testimony are clear and convincing and supported by substantial evidence in the record. However, the Court will not reverse a decision by an ALJ in which the errors are harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1117-22 (9th Cir. 2012). The Court must first determine whether the ALJ's error was "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion," and therefore, harmless. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

The ALJ rejected plaintiff's testimony and established a residual functional capacity ("RFC") of medium work which requires "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). Had the ALJ considered the fatigue, tremors, leg pain and numbness, and fall history discussed in plaintiff's testimony, he may have arrived at a different RFC. This directly impacts step five of the disability analysis and results in harmful error requiring reversal.

(2)   Whether the ALJ properly evaluated the medical evidence.

1   Plaintiff contends the ALJ failed to find her fibromyalgia to be either a medically

2   determinable or severe impairment (Dkt. 19, 2-3). The Commissioner concedes the ALJ

3   erred by failing to find fibromyalgia to be medically determinable (Dkt. 14). In light of

4   the Commissioner's concession and required reevaluation of plaintiff's testimony, the

5   fibromyalgia diagnosis should be reconsidered on remand.

6   In summary, because the ALJ's determination of plaintiff's credibility needs to be

7   reconsidered, the ALJ should reevaluate the medical and lay evidence, as well, in light of

8   this ruling.

9   (3)   Award of Benefits v. Remand.

10  Plaintiff requests remand for award of benefits. Generally, when the Social

11  Security Administration does not determine a claimant's application properly, "'the

12  proper course, except in rare circumstances, is to remand to the agency for additional

13  investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)

14  (citations omitted). However, the Ninth Circuit has put forth a "test for determining when

15  [improperly rejected] evidence should be credited and an immediate award of benefits

16  directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v.*

17  *Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).  After determining the ALJ made a harmful legal error, the Court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and 'all essential factual issues have been resolved.'" *Dominguez v. Colvin*, No. 13-17380, 2015 WL 8600040, at *3 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

In this case, the record is not fully developed. Additional proceedings are necessary to reconsider plaintiff's testimony and determine the correct RFC. It is the job of the ALJ, not this Court, to consider how plaintiff's impairments affect the formulation of the RFC. *Dominguez, supra*, 2015 WL 8600040, at *5 12. 20 C.F.R. § 416.927(d)(2). Remand for further proceedings is the appropriate remedy.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 19th day of February, 2016.

J. Richard Creatura
United States Magistrate Judge